Territorial Law Library

FILED
SUPERIOR COURT
OF GUAM

202 FEB -5 PM 1:44

CLERK OF COURT

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | ) CRIMINAL CASE NO. CF0643-11 |
| | ) |
| v. | ) **DECISION AND ORDER ON** |
| | ) **DEFENDANT'S MOTION TO** |
| ANTHONY R. PUAS, | ) **DISMISS** |
| | ) |
| Defendant. | ) |
| | ) |

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III, on March 27, 2012 on Defendant's Motion to Dismiss. Attorney Maria G. Fitzpatrick represented Defendant, Anthony R. Puas. Attorney Brian D. Gallagher represented the People of Guam. Following the hearing the Court took the matter under advisement. Having considered the parties' written and oral arguments, the Court now issues its Decision and Order.

## FACTUAL HISTORY

Defendant was charged by indictment with Second Degree Criminal Sexual Conduct (As a 1st Degree Felony) under 9 G.C.A. §§ 25.20(a)(3) and (b), Second Degree Criminal Sexual Conduct (as a 1st Degree Felony) under 9 G.C.A. §§ 25.20(a)(6) and (b), and Felonious Restraint (As a 3rd Degree Felony). The charges stem from an incident in which a female individual (the "victim") was approached by a male suspect in a parking lot late at night. The suspect pulled the victim's hair, pinning her to her car while the suspect grabbed the victim's breast. The victim then kneed the suspect in the groin, thereby allowing her to flee in her

vehicle. The victim reported the incident to police and later identified Defendant as her attacker.

## DISCUSSION

Defendant's first contention is that the evidence presented to the grand jury does not support the charge for Felonious Restraint. Defendant then argues that because the felonious restraint charge must be dismissed, there is no predicate felony offense to support the First Charge for First Degree Criminal Sexual Conduct. Finally, Defendant claims that there was insufficient evidence of mental anguish suffered by the victim to support the indictment on the Second Charge for Second Degree Criminal Sexual Conduct. The following discussion first addresses Defendant's arguments related to the Felonious Restraint charge (the Third Charge), and is followed analyses of the First Charge (Second Degree Criminal Sexual Conduct) and the Second Charge (also Second Degree Criminal Sexual Conduct).

I.    Legal Standard

Generally, an indictment is valid where the grand jury receives sufficient competent evidence to support a reasonable cause finding that the accused committed an indictable offense. 8 G.C.A. §§ 50.42, 50.54(b). "Reasonable cause amounts to evidence such that 'a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.'" People v. Grajo, 1987 WL109393 at 2 (D. Guam App. Div. 1987). An indictment should not be dismissed prior to trial due to alleged errors in the grand jury proceedings unless it is shown that the defendant is prejudiced by the error. Bank of Nova Scotia v. U.S., 487 U.S. 250, 255 (1988). In order to show prejudice, the challenger must establish that a violation has occurred and that the grand jury's decision to indict was substantially influenced by the violation. Bank of Nova Scotia, 487 U.S. at 255. The person challenging the indictment carries a difficult burden and must demonstrate that the grand jury was deceived by the prosecutor's conduct, thus infringing upon the grand jury's ability to exercise

independent judgment. See U.S. v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir. 1983); U.S. v. Wright, 667 F.2d 793, 796 (9th Cir. 1982).

A prosecutor's failure to properly instruct a grand jury may, under certain circumstances, be grounds for dismissal of an indictment. "Erroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." United States v. Wright, 667 F.2d 793, 796 (9th Cir. 1982) (citing United States v. Linetsky, 533 F.2d 192, 200-201 (5th Cir. 1976)). The record must show "that the conduct of the prosecuting attorney was flagrant to the point that the grand jury was 'deceived' in some significant way." United States v. Wright, 667 F.2d 793, 796 (9th Cir. 1982) (citing United States v. Cederquist, 641 F.2d 1347, 1352-53 (9th Cir. 1981)). The conduct must significantly infringe upon the ability of the grand jury to exercise independent judgment. Id. In regards to the prosecutor's actions regarding preliminary instructions, the prosecutor does not have a duty to instruct the grand jury on the law to the same extent that a judge must instruct a petit jury. People v. Gnass, 101 Cal. App. 4th 1271, 1306, 125 Cal. Rptr. 2d 225, 252 (2002); People v. Calbud, Inc., 49 N.Y.2d 389, 394, 402 N.E.2d 1140, 1143 (1980). However, a prosecutor should provide the grand jury statutory definitions of terms whose meaning is not obvious. See People v. Rockwell, 97 A.D.2d 853, 854, 469 N.Y.S.2d 252, 254 (1983); People v. Levens, 252 A.D.2d 665, 666-67, 677 N.Y.S.2d 390, 392 (1998). With these principles in mind, this Court now turns to the relevant evidence and instructions presented by the prosecution in support of the indictment in this case.

II.     The Third Charge: Felonious Restraint

Defendant first contends that the evidence presented to the grand jury was insufficient to support the felonious restraint charge. Specifically, Defendant argues that there was no evidence that the accused knowingly exposed the victim to circumstances that would pose a risk of serious bodily injury as required by statute. This Court agrees with the Defendant that there was little evidence presented to support the charge. Perhaps more important to this Court's decision is the fact that

the prosecution failed to instruct the grand jury on the statutory definition of serious bodily injury—an essential element of the offense—which this Court finds had the likely effect of misleading the grand jury in their decision to indict on the Felonious Restraint charge given the weakness of the evidence presented.

The prosecution charged Defendant with Felonious Restraint under title 9, section 22.30(a), which provides:

### § 22.30. Felonious restraint; Defined & Punished

A person commits a felony of the third degree if he knowingly

> (a) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury
>
> . . . .

The definition of the term "serious bodily injury" is adopted from section 16.10(c), which states:

> Serious Bodily Injury means bodily injury which creates: serious permanent disfigurement; a substantial risk or [sic] death or serious, permanent disfigurement, severe or intense physical pain or protracted loss or impairment of consciousness or of the function of any bodily member or organ.

9 G.C.A. § 16.10(c). The term "serious bodily injury" is legally distinct from the phrase "bodily injury," which means "physical pain, illness, unconsciousness or any impairment of physical condition." 9 G.C.A. § 16.10(b).

The grand jury received very little evidence regarding any risk of injury to the victim. The testimony indicated that Defendant had accosted the victim by grabbing the victim's hair, yanking her shirt, and touching her breast and that the victim received "several scratches from when [Defendant] pulled her shirt and rubbed her breast area." (Trans. of Grand Jury Proc., Super. Ct. Case No. CF0643-11, p. 10) It is highly questionable whether the evidence supports a probable cause finding that Defendant committed the offense of Felonious Restraint. See, e.g., Com. v. Schilling, 431 A.2d 1088, 1092, 288 Pa.Super. 359, 367-68 (1981) (fact that defendant restrained victim in a car by pointing a gun to the victim's temple held

insufficient to sustain unlawful restraint conviction because evidence showed the defendant knew firearm was not loaded and therefore he could not be found to have placed victim in danger of incurring serious bodily injury). However, even where there is only scant evidence supporting the allegations, this Court is normally reluctant to disturb the grand jury's findings.

The lack of evidence of serious bodily injury or risk of such injury is, however, compounded in this case by the fact that the prosecution also failed to instruct the grand jury on the legal definition of the phrase "serious bodily injury." In this jurisdiction that phrase has significant legal import and maintains a specific meaning that is distinct from the statutory definition of "bodily injury" defined by title 9, section 16.10(b). Without a definition of "serious bodily injury" the grand jury had no way to distinguish this phrase from other similar, yet distinct legal terms or common lay definitions, and had no opportunity to apply the specific legal definition to determine whether the evidence was sufficient to prove the essential elements of the crime. See, e.g., People v. Rockwell, 97 A.D.2d 853, 854, 469 N.Y.S.2d 252, 254 (1983) (acknowledging that while the term 'physical injuries' is so obvious that no definition need be given to the grand jury, failure to instruct grand jury as to the phrase 'serious physical injury' was more significant). In this case, there is a strong likelihood that the limited evidence of a risk of serious bodily injury, combined with the prosecution's failure to instruct the grand jury on technical definitions of the essential elements of the offense created a substantial risk that the grand jury was misled and that these factors influenced the decision to indict. As such, dismissal of the Felonious Restraint charge is warranted.

III.    The First Charge: First Degree Criminal Sexual Conduct

Defendant next argues that if the felonious restraint charge is dismissed, the First Charge must be dismissed also as that charge is predicated upon the Felonious Restraint offense. The First Charge of the Indictment states as follows:

## FIRST CHARGE

On or about the 21st day of November, 2011, in Guam, ANTHONY R. PUAS did commit the offense of *Second Degree Criminal Sexual Conduct*, when he intentionally engaged in sexual contact with another, to wit: by causing his hand to touch the breast area of C.M.T. (DOB: 01/13/1991), and the sexual contact occurred under circumstances involving another felony, namely, **Felonious Restraint**, in violation of 9 GCA §§ 22.20 (a)(3) and (b).

The offense of Second Degree Criminal Sexual Conduct, charged under title 9, section 22.20 (a)(3), does indeed require a predicate felony offense. Based on this court's ruling that the Felonious Restraint charge must be dismissed, the existing felony offense on which the First Charge is based is no longer applicable; therefore, the First Charge must be dismissed as well.

### IV.    The Second Charge: First Degree Criminal Sexual Conduct

In his final argument, Defendant asserts that there was insufficient evidence presented to the grand jury to support the Indictment on the First Degree Criminal Sexual Conduct charge filed under title 9, sections 25.20 (a)(6) and (b) of the Guam Code. The Second Charge provides:

## SECOND CHARGE

On or about the 21st day of November, 2011, in Guam, **ANTHONY R. PUAS** did commit the offense of *Second Degree Criminal Sexual Conduct*, when he intentionally engaged in sexual contact with another, to wit: by causing his hand to touch the breast area of *C.M.T. (DOB: 01/13/1991)*, and **ANTHONY R. PUAS** caused personal injury to the victim and force or coercion was used to accomplish sexual contact, in violation of 9 GCA §§ 25.20 (a)(6) and (b).

Under title 9, section 25.20(a) of the Guam Code, "a person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if . . . the actor causes personal injury to the victim and force

or coercion is used to accomplish the sexual contact . . . ." 9 G.C.A. § 25.20(a)(6). *"Personal Injury* means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease or loss or impairment of a sexual reproductive organ." 9 G.C.A. § 25.10(a)(7). A review of the grand jury transcripts indicates that the prosecution did not instruct the grand jury on the definition of the phrase "personal injury" or of any of phrase contained therein.

Defendant's argument rests on his assertion that the prosecution did not present evidence of mental anguish. Defendant cites People v. Petrella, 424 Mich. 221, 257, 380 N.W.2d 11, 18-19 (1986) in which the Michigan Supreme Court defined the phrase "mental anguish" as used in Michigan's criminal sexual conduct statutes, which are identical to Guam's statutes. See People v. Okeril, Decision and Order in Criminal Case No. CF0316-96 (Sup. Ct. Guam, May 29, 1997) (recognizing that Guam's Criminal Sexual Conduct statutes were adopted from Michigan and citing Petrella for applicable definition of "mental anguish"). The Petrella court held that "mental anguish" means "extreme or excruciating pain, distress, or suffering of the mind." Petrella, 424 Mich. at 257. Applying this definition to the consolidated cases on appeal the Michigan court held that evidence that the victim had screamed and cried during and after her father raped her did not rise to the level of mental anguish that was required in order to elevate the criminal sexual conduct to a greater offense. Id. at 272. Given that Guam's statutes are identical to Michigan's, this Court finds Michigan precedent highly persuasive.[1] Gibbs v. Holmes, 2001 Guam 11, ¶ 15 (where a Guam statute is similar to a state or federal statute, the state or federal cases interpreting that statute are persuasive authority in Guam).

The only testimony before the grand jury relating to mental anguish was testimony that the victim was upset and during her encounter with Defendant.

---

[1] The prosecution cites Illinois case law for the proposition that mental anguish may be presumed in cases of sexual assault. See People v. Williams, 638 N.E. 2d 207 (Ill. App. 3d 1994). This Court finds no compelling reason to apply Illinois law within this jurisdiction when Michigan law contains identical statutes and compelling precedent. Therefore, this Court finds the prosecution's argument on this point unconvincing.

Applying Michigan's definition of "mental anguish" to the facts of this case, and viewing those facts in a light most favorable to the prosecution, it is clear that the evidence does not support a finding that the attack caused the level of mental anguish necessary to elevate the offense to second-degree felony under title 9, section 25.20(a)(6) and (b). Furthermore, the fact that the prosecution did not describe to the grand jury the legal meaning of the phrases "personal injury" or "mental anguish" raises concern as to whether the grand jury had any context to properly find that Defendant knowingly caused the victim to suffer mental anguish. Personal injury, however, encompasses more than simply mental anguish and thus this Court's analysis does not end here.

Defendant overlooks the fact that the term "personal injury" also includes any "bodily injury" suffered by a victim. Although Chapter 25 governing sexual offenses does not include a definition of bodily injury, title 9, section 16.10(b) states that *"Bodily Injury* means physical pain, illness, unconsciousness or any impairment of physical condition." The grand jury in this case heard evidence that Defendant pulled the victim's hair, that the victim was crying, and that the victim had scratches on her chest resulting from the attack. When viewed in a light most favorable to the prosecution, this evidence would likely support a probable cause finding that the victim suffered physical pain during the assault. See People v. Kraai, 92 Mich. App. 398, 403, 285 N.W.2d 309, 312 (1979) ("We find no indication in the statute that the injuries suffered must necessarily be permanent or substantial."); e.g., People v. Mackle, 241 Mich. App. 583, 598, 617 N.W.2d 339, 347-48 (2000) (open-hand slaps supported a finding of physical injury.").

However, this Court remains concerned by the fact that the prosecution failed to provide the grand jury with a statutory definition of "personal injury." Personal injury is an essential element of the charged offense and that phrase contains nuanced legal meaning that is specifically defined by statute to include a number of distinct components. There is a substantial risk that the grand jury's decision to indict the Defendant on the Second Charge was influenced by the fact

that the grand jury did not receive the available legal definitions of the essential elements of the crime.

## CONCLUSION

This is a case for which a probable cause finding on the charged offenses hinges on the nuances of the legal definitions for the terms "serious bodily injury" and "personal injury." The evidence presented to the grand jury in support of the charged crimes was far from overwhelming and this Court cannot simply overlook the fact that the prosecution failed to instruct the grand jury on crucial legal definitions. Based on the foregoing, the Indictment shall be DISMISSED WITHOUT PREJUDICE. Should the People choose to re-indict, the People shall instruct the grand jury on the relevant legal definitions regarding the essential elements of the offenses charged.

It is **SO ORDERED** this 5th day of July, 2012.

JUL 0 5 2012

_____
Honorable Judge Alberto C. Lamorena III
Presiding Judge, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam.

JUL 0 5 2012

Domingo M. Nego
Deputy Clerk, Superior Court of Guam



-9-